## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

P.R.A. COMPANY, d/b/a VANTAGE
PLASTICS,

                                                     Case No.

        Plaintiff,

   v.

ARGLASS YAMAMURA SE, LLC,

        Defendant.

_____/

COUZENS, LANSKY, FEALK,
ELLLIS, ROEDER & LAZAR, P.C.
By:   David A. Lawrence (P48630)
       Prerana R. Bacon (P69680)
Attorneys for Plaintiff
39395 W. Twelve Mile Road
Suite 200
Farmington Hills, MI 48331
(248) 489-8600
David.lawrence@couzens.com
Prerana.bacon@couzens.com
_____/

## **COMPLAINT**

     NOW COMES Plaintiff P.R.A. Company d/b/a Vantage Plastics ("Vantage"),

and for its Complaint against Defendant Arglass Yamamura SE, LLC ("Arglass")

alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff, P.R.A. Company d/b/a Vantage Plastics ("Vantage"), is a Michigan corporation with its principal place of business in Standish, Michigan.

2.      Defendant, Arglass Yamamura SE, LLC ("Arglass"), is a Delaware limited liability company with its principal place of business in Valdosta, Georgia.

3.      Upon information and belief, the sole member of Arglass is another Delaware limited liability company, Arglass Yamamura, LLC.[1]

4.      Upon information and belief, Arglass Yamamura, LLC has two members, YGQ California, Inc. n/k/a Yamamura International California, Inc. and Cambium Arglass, LLC.[2]

5.      Upon information and belief, YGQ California, Inc. n/k/a Yamamura International California, Inc., is a California corporation with its principal place of business in Walnut Creek, California.[3]

6.      Upon information and belief, Cambium Arglass LLC is a Delaware limited liability company with eight members, José de Diego-Arozamena (Arglass' CEO), the Andrew J. Astrachan Trust, Marc Utay, the Utay Family Trust, Cathy Daniels, Bob Ezrin, Robert Friedman, and José M. Ruiz Luque (Arglass' CFO).[4]

---

[1] *See* Case No. 7:22-cv-00059-HL, ECF No. 2.
[2] *Id.*
[3] *Id.*
[4] *Id.*

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

7. Upon information and belief, none of the members of Cambium Arglass LLC are citizens of the state of Michigan.

8. Accordingly, complete diversity exists between Plaintiff and Defendant because Plaintiff is a citizen of Michigan and no member of Defendant Arglass is a citizen of Michigan.

9. The District Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) because it is a civil action between "citizens of different States" wherein the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## **FACTUAL ALLEGATIONS**

11. Vantage is a custom thermoforming company which designs, tools, and manufactures plastic products, including but not limited to plastic pallets and tier sheets, for a variety of industries.

12. Arglass is a manufacturer of glass bottles for distribution within the food and beverage industry.

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

13.     In August 2019, Arglass announced plans to build its first U.S.-based glass container manufacturing plan in Valdosta, Georgia (the "Georgia production facility").

14.     Upon information, Arglass' tentative furnace-start up (production start) date for its Georgia production facility was scheduled for November 2020.

15.     In May 2020, the parties first began discussing the possibility of Vantage supplying reusable plastic pallets and tier sheets ("Pallet Combos") to Arglass for glass palletization at the Georgia production facility.

16.     According to Arglass, the Pallet Combos were to be used for transporting/conveying finished glass products within the Georgia production facility and for shipping finished glass products to Arglass' U.S.-based customers.

17.     In June 2020, Vantage salesman Greg Murphy met with Arglass CEO José de Diego Arozamena and (then) Head of Supply Chain Jose "Joe" Luna, at the Georgia production facility to further discuss the project/potential business relationship (the "Pallet Program").

18.     Following the meeting, on June 23, 2020, Mr. Murphy sent a draft Pallet and Tier Sheet Lease Agreement (the "Rental Agreement") to Arglass with proposed terms for the Pallet Program.

19.     Under the proposed Pallet Program and Rental Agreement, Vantage would supply 30,000 plastic reusable pallets and 210,000 56"x44" tier sheets,

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

4

collectively valued at nearly $4 million, to Arglass in exchange for a monthly lease payment.

20.    Arglass would also be responsible for paying, up front, a one-time tooling cost for manufacture of the prototype and production pallets for the Pallet Program.

21.    In his June 25, 2020 response to the proposal, Arglass CEO de Diego Arozamena represented Arglass "would be delighted to work with Vantage Plastics".

22.    He also confirmed that Arglass was not interested in buying the Pallet Combos from Vantage outright; rather, Arglass wanted a "long-term service agreement" for a "pallet renting program **(the pallets remain [Vantage's] legal property at all times)**" whereby Arglass "would pay [Vantage] an amount either per pallet or total monthly fee to cover the amortization of [Vantage's] investment in pallets, the services provided and [Vantage's] margin".

23.    In exchange for that monthly fee, Vantage would provide the following "services":

> having constantly available a sufficient pool of pallets to cover [Arglass'] needs (internal movements and movements to customers) (a specific number to be mutually agreed); managing and monitoring the pool of pallets as they move from [Arglass'] facility to a customer's facility; controlling and managing the return of pallets from customers; washing pallets before re-delivery to [Arglass]…; and replacing broken or missing pallets into the pool.

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

5

24.    Arglass confirmed this would be a requirements contract, insofar as Arglass "would commit to use Vantage Plastics for 100% of [its] pallet and tier sheet needs during the term of the agreement".

25.    Arglass CEO de Diego Arozamena claimed the proposed Pallet Program "create[d] a win-win situation for both companies, as **[Vantage] should expect to have a more solid and long-term relationship that is based more on services than on simply buying/selling pallets and tier sheets**".

26.    Over the course of the next several months, the parties actively engaged in negotiation of the Rental Agreement, with Vantage focused on pinning-down the specific quantity of Pallet Combos Arglass wanted and when – critical information that was fluid and in a perpetual state of flux due to Arglass' inability to adequately estimate its Pallet Combo needs for its new production facility.

27.    Arglass, on the other hand, seemed laser-focused on getting Vantage to supply Pallet Combos as quickly as possible. *See, e.g.,* Arglass CEO de Diego Arozamena July 16, 2020 email: "We need to move quickly on this [the Rental Agreement] so we can make a decision and have time to get everything to us before our start of operations."

28.    Just a few weeks later, on August 11, 2020, Arglass issued Purchase Order No. AYSE000016 for pallet tooling clearly as inducement for Vantage to begin

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

6

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

manufacturing and supplying prototype pallets for the Pallet Program **even though the parties were still negotiating the Rental Agreement.** (Arglass Purchase Order, **Ex. 1**)

29.    A week later, Arglass CEO de Diego Arozamena circulated an updated draft of the Rental Agreement and stated, "We look forward to getting your comments back as soon as possible so we can get this signed soon".

30.    In late September 2020, Arglass sent an 'onboarding table' to Vantage which showed how many Pallet Combos Arglass wanted Vantage to supply, per month, over the course of the first few years of the proposed 5-Year Pallet Program.

31.    According to this 'onboarding table', Arglass wanted 5,000 pallets/35,000 tier sheets by December 2020 and another 5,000 pallets/35,000 tier sheets by the end of January, 2021.[5]

32.    Just two days later, on September 30, 2020, Arglass CEO de Diego Arozamena advised Arglass was "prepared to accept" the latest iteration of the Rental Agreement with three proposed changes, and that if the proposed changes were acceptable to Vantage, "**we have a deal**".

33.    Following    internal    discussion    and    then    discussion    between Messrs. Murphy and Luna, Mr. Murphy circulated a revised version of the Rental Agreement containing all of Arglass' proposed changes and requested Arglass sign the Rental Agreement.

---

[5] It bears noting – these negotiation discussions were taking place during the height of the COVID-19 Pandemic and in the midst of the supply chain issues created by it.

34.    Mr. Murphy also advised Arglass about the status of Vantage's work to date on the Pallet Combos for the Pallet Program, noting Vantage was "ready to cut the tooling, the CAD modeling is completed" and required "the go ahead" from Arglass to begin cutting, as this phase was "on pause as we are working out the agreement".

35.    Messrs. Murphy and Luna again spoke on October 1, 2020 about the Rental Agreement, the outcome of which Mr. Murphy memorialized in his October 1 email.

36.    In that email, Mr. Murphy repeated the request for Arglass' written approval to move forward with the pallet tooling in response to Arglass' continued pressure to get Pallet Combos in time for its anticipated November 2020 glass production start-up.

37.    When Mr. Murphy asked Arglass to send an updated iteration of the Rental Agreement with its additional proposed changes, Arglass CEO de Diego Arozamena told Vantage to "get all of this on the draft rental agreement for our review…please make the changes there to make sure we're on the path to a final mutually acceptable agreement".

38.    The draft Rental Agreement was revised to incorporate Arglass' proposed changes and sent to Arglass for signature.

39.    Meanwhile, on October 2, 2020, Arglass provided written approval for Vantage to "proceed [with] producing the Tooling and sampling work for testing of

both the 56 x 44 pallet and the 48 x 40 pallet per PO # AYSE000016". (Tooling Approval, **Ex. 2**).

40.     Within less than six weeks, on November 19, 2020, ten (10) 56"x44" prototype pallets and fifty (50) tier sheets were delivered to Arglass' Georgia production facility for Arglass' use in testing its palletization equipment.

41.     On November 30, 2020, Arglass started the furnace heat-up process (i.e. glass production) at the Georgia production facility with the stated plan of palletizing the finished glass using its own wood pallet inventory.

42.     Knowing it would need tier sheets once palletizing began, Arglass began requesting production-level tier sheets for use with the non-Vantage pallets from Vantage on or about December 10, 2020.

43.     In direct response to Arglass' request, Vantage delivered 100 sample tier sheets (56"x44", 3 mm) to the Georgia production facility on December 14, 2020 to ensure they could be used with Arglass' pallets. (Vantage 12/10/20 Invoice VS0006278, **Ex. 3**).

44.     On December 15, 2020, Mr. Luna confirmed receipt of the tier sheets and importantly, acknowledged they could be used with Arglass' pallets.

45.     Notably, although Arglass had not yet tested the Vantage prototype pallets which had been delivered in November "because [the] machine is still not working",

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

Mr. Luna asked Mr. Murphy when Arglass "can get [production-level] pallets. I do not want to use wood…and Im (sic) pulling glass this Friday [December 18, 2020]".

46.     When Mr. Murphy explained the lack of feasibility in supplying production-level pallets in the next three days, Mr. Luna then asked, "Can you get tier sheets?"

47.     Mr. Luna's request prompted several phone calls between the two on December 16, 2020 and early afternoon December 17, 2020 in which:

    a.    Arglass solicited Vantage to supply 45,000 56"x44", 3 mm tier sheets by the end of January 2021 for immediate use with Arglass' existing pallet inventory[6];

    b.    Vantage confirmed its tier-sheet manufacturer could release 10,500 tier sheets to Arglass on December 18, 2020; and

    c.    Arglass approved Vantage pulling-ahead the balance of the order (34,500 tier sheets) "as soon as possible" for expedited delivery to Arglass.

48.     Most importantly, and clearly as another inducement for Vantage to supply the requested 45,000 tier sheets although Arglass had yet to sign the Rental Agreement, Mr. Luna agreed that Arglass would buy all of the 45,000 requested tier sheets at $5.32/tier sheet from Vantage in the event the Pallet Program/Rental Agreement was never consummated.

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

---

[6] This is 10,000 more than what Arglass had estimated in late September when it provided the Pallet Combo onboarding table for the Pallet Program.

49.     Mr. Murphy prepared a Tier Sheet – **Interim Supply Agreement (the "Tier Sheet Agreement") memorializing Arglass' agreement** immediately following his last phone call with Mr. Luna on **December 17, 2020**, around 4:15 PM.

50.     On the morning of December 18, 2020, the available lot (10,416) of the requested production-level tier sheets were released for shipment to Arglass' Georgia production facility.

51.     Once Vantage confirmed the shipment with its supplier, Mr. Murphy sent the following email to Mr. Luna with the Tier Sheet Agreement attached later that day:

Hi Joe –

Per our conversations, please sign and return this Tier Sheet Agreement. Also, we are asking that you provide us a PO # for 45,000 Tier Sheets. This would cover the need you have near term.  We have shipped you 10,500 to date as of today, and it would allow for us to get the remaining 34,500 on order right away.

Again, we will not Invoice against the PO # for 45,000, unless we do not get the Rental Agreement in place.  We both have confidence we will get the Rental Agreement closed, this is just in case.

Please sign, and return, and please send a PO for 45,000 Tier Sheets as soon as you can.

52.     The 10,416 tier sheets were delivered to Arglass' Georgia production facility on December 21, 2020. (Arglass Signed GTZ Bill of Lading, **Ex. 4**).

53.     On December 22, 2020, Mr. Murphy sent a follow up email to Mr. Luna, again requesting Arglass sign and return the Tier Sheet Agreement and a purchase

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

order for the 45,000 tier sheets to start the process for delivering the remaining 34,500 tier sheets to Arglass.

54.    He further explained:

I am under some pressure to get this tier sheet agreement and PO for 45,000 Tier Sheets in place (again, we will hold the PO and not Invoice against it unless everything doesn't come together), because I have shipped you 10,500 tier sheets so far with nothing in place. My management is pushing me to get this back from you as soon as I can as we discussed, please.

55.    Rather than sign and return the Tier Sheet Agreement, Mr. Luna simply responded later that evening by confirming, "I told you yes, I can sign an agreement telling you that with the Agreement is not sign by any means, we can buy them at that price…"

56.    The following day, December 23, 2020, Mr. Luna returned the Tier Sheet Agreement with his signature affixed but no purchase order, seemingly refusing to issue one in light/because of the signed Tier Sheet Agreement.

57.    A copy of the fully executed Tier Sheet Agreement is attached as **Ex. 5**.[7]

58.    The Tier Sheet Agreement indicates the design specifications (56"x44"x3 mm, green corrugated plastic, 2" radius corners, sealed edges, with RFID tags) and

---

[7] Although Mr. Luna signed the Tier Sheet Agreement on December 23, 2020, the December 17, 2020 date appearing throughout the agreement reflects the actual date of the parties' agreement (i.e. Arglass' verbal agreement to pay); the date when Mr. Murphy prepared the agreement contemporaneous with his last phone call with Mr. Luna earlier that afternoon; and is the "date" for purposes of the phrase "supplied by Vantage from today's date forward" as evidenced by Mr. Murphy's various emails.

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

Arglass' intended use ("normal use with alternative pallets") applicable to the 45,000 tier sheets Arglass requested.

59.    The Tier Sheet Agreement does not specify any performance requirements for the 45,000 requested tier sheets other than they must be useable "with alternative pallets", which Arglass confirmed they were.

60.    The sole condition precedent to enforcement of the Tier Sheet Agreement is "in the event the parties cannot get the Rental Agreement signed and in place".

61.    Despite the exigency Arglass placed on Vantage to begin supplying the plastic tier sheets for immediate use with Arglass' wood pallets, shortly after receiving them, Arglass (falsely) advised it was holding off on using them for shipment of glass products to its customers with Arglass' wooden pallets due to concerns the customers would not return them.

62.    Arglass' purpose for sharing this information with Vantage couldn't have been clearer – Arglass was pressuring Vantage to continue working towards supplying Pallet Combos for the proposed Pallet Program as soon as possible without a signed Rental Agreement in place.

63.    Indeed, by February 17, 2021, Vantage rush-delivered ten (10) production-level 56"x44" pallets to Arglass' Georgia production facility for onsite testing with Arglass' equipment.

13

64.    Again, despite Arglass' urgency for the pallets, the pallets sat in Arglass' facility and could not be tested because of an on-going design issue with its bagging operation equipment/manufacturer.

65.    On March 8, 2021, Arglass emailed the manufacturer and Vantage seeking updates. "We are running out of pallets, **we need to place the PO for Plastic**…Urgent, please tell me when this [the bagging equipment] will be ready?"

66.    On or about April 1, 2021, and at Arglass' request, Vantage shipped a steel plate for use with the palletization testing. (Vantage Invoice VS0007467, **Ex. 6**).

67.    Roughly five weeks later, Arglass was able to run the palletization testing using the Vantage production pallets and 70 of the 10,416 previously-supplied tier sheets.

68.    In an April 13, 2021 email to Arglass leadership and Vantage, Mr. Luna confirmed that these Pallet Combos passed testing, noting "Vantage Pallets was present and he (sic) is ready to move forward on the Agreement".

69.    On April 22, 2021, Arglass and Vantage participated in a Microsoft Teams meeting to discuss next steps.

70.    Given the successful testing, Mr. de Diego Arozamena/Arglass specifically directed Vantage to "run in parallel beginning production of both pallet sizes, and tier sheets, while wording of contract (sic) [the Rental Agreement] is being

finalized for signatures by both companies" and shipment of all Pallet Combos to begin June 1, 2021.

71.     On May 24, 2021 and May 27, 2021 – at Vantage's request – Arglass provided written approval of the 56"x44" and 48"x40" pallet designs for production.

72.     On June 7, 2021, Mr. Murphy sent the latest draft of the Rental Agreement to Mr. Luna and advised: "Production is running currently on both pallet sizes and the tier sheets, therefore we need to get this in place prior to shipping product".

73.     Mr. Luna did not respond, so Mr. Murphy sent another email on June 16, 2021 asking when Arglass expected to sign the Rental Agreement.

> Per the instructions from Arglass to run in parallel finalizing and signing the agreement and producing the first 5000 Qty of the 56 x 44 pallets, 35,000 Tier Sheets, and 3900 Qty of the 48 x 44 pallet, as you know we have allocated all raw materials for this, and are currently manufacturing all of these items for you 24/7.  We are accumulating truckloads of product and need to begin shipping as soon as possible.
>
> Please let me know when we can have the signed copy back so we can begin supplying you.

74.     Arglass CFO José "Pepe" M. Ruiz Luque responded that the Rental Agreement was "being reviewed" by Arglass' "Lender".

75.     This was the first time Arglass disclosed to Vantage the necessity of Arglass lender approval for the Pallet Program/Rental Agreement.

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

76.    Arglass CEO de Diego Arozamena similarly advised Vantage on June 21, 2021 that the Rental Agreement "will not be ready to be singed (sic) in the next day or so" because it needed "to be reviewed and approved by the bank".

77.    Shockingly, in that same email, Arglass CEO de Diego Arozamena advised for the first time that "we also need to have those customers who will be entering into the program, to sign a pallet agreement so we have full control and traceability on the pallets and tier sheets. This will take a couple of weeks".

78.    Based on this newly-acquired information and justifiably concerned about the significant financial investment made to date, Arglass' financial condition, and Arglass' continued delays in signing the Rental Agreement, Vantage made the decision to pause production of the pallets.

79.    Mr. Murphy relayed Vantage's decision in a phone call to Mr. Luna on June 21, 2021.

80.    In response, Mr. Luna again reassured that Arglass "will be taking the pallets" and that "this is just a delay on getting the feedback" from its bank.

81.    After their call, and presumably upon Mr. Luna's urging, Mr. Murphy sent an email to Arglass' leadership team in an attempt to move the ball forward.

> Anything that can be done to try and expedite would help.  We have about 9 truckloads produced so far, and all the raw materials produced and allocated for the first 5000 qty of the 56 x 44 [pallets], 35,000 qty of Tier Sheets, and 3,900 qty of the 48 x 40 [pallets].

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

82. Messrs. Murphy and Luna spoke again on August 5, 2021, and Mr. Murphy sent the following email confirming their conversation:

> Thanks for the phone call back on where things stand regarding signing the agreement and us beginning to supply both pallet sizes and tiers sheets.
>
> Based on our conversations, as I understand the mock run RFID testing that Arglass ran last week did not go well and there is some additional work to be done by Arglass regarding the RFID readers and scanning equipment in order to have full traceability of the pallets in your factory. You explained that it is for that reason only, and no other reason, why you are not ready to sign the agreement and bring in the pallet and tier sheet fleet to begin using them, as this traceability work needs to be fully completely in order to not lose the pallets and tier sheets.
>
> It sounds like this could take 3-4 weeks to complete this work, before being able to sign the agreement and us beginning to supply.
>
> As you know, we began all of production of all three items (56 x 44 Pallet, 48 x 40 Pallet, and 56 x 44 Tier Sheet) based on all of our most recent meetings. In particular the meeting we all had back on Thursday April 22, 2021 with both companies leadership, Arglass asked Vantage Plastics to run in parallel the final Agreement document work, in conjunction with beginning production of all items in order to meet a June 1st date to begin shipping. Vantage did this in good faith based on that meeting, and to date we have approximately $750,000 in raw materials and finished goods on hand for Arglass. I have also included a few photos of the finished goods ready to ship.
>
> I understand the RFID network details need to be finalized by Arglass and then you are ready to move forward. We look forward to that being completed and the Agreement being signed, so we can begin supply as planned.

83. Four days later, on or about August 9, 2021, Arglass asked Vantage for an additional 11,550 (56"x44", 3 mm) tier sheets.

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

17

84.     Vantage requested the release of said quantity from its vendor, and the tier sheets were delivered to Vantage's Michigan facility on or about August 9, 2021 as Vantage awaited further updates from Arglass.

85.     On or about August 31, 2021, Vantage President Paul Aultman spoke with Arglass CEO de Diego Arozamena regarding the status of the Pallet Program/Rental Agreement at which time Arglass CEO de Diego Arozamena advised that if the pallets passed one additional test, Vantage should begin supplying the production pallets.

86.     That same day, Vantage shipped five (5) 56"x44" and two (2) 48"x40" additional pallets to Arglass. (Vantage Invoice VS0009598, **Ex. 7**).

87.     The additional testing was performed on September 15, 2021 with Vantage engineering onsite for the testing.

88.     Based on the testing outcome, Arglass' Plant Engineering team determined a "design flaw" in Arglass' bagging equipment was the root cause of the pallet transfer issues observed during bagging operation and requested design modifications from its bagging equipment manufacturer.

89.     According to Arglass' October 4, 2021 email, once the design modifications were made, it would run Vantage's pallets "through the line again"…

90.     Incredibly, however, and consistent with its past conduct, Arglass also advised Vantage that it would also "need to make sure the pallet can run in [its] customers line as well".

91.     This was the first mention of such a precondition to commencing the Pallet Program and/or signing the Rental Agreement with Vantage.

92.     On July 13, 2022 – with no signs of a signed Rental Agreement in place in the foreseeable future after nearly two years of negotiation and Vantage's significant financial expenditure and work to date - Mr. Murphy sent the following email to Mr. Luna with the fully executed Tier Sheet Agreement attached:

> Per our conversation and as we agreed on, in the Fall of 2020 you requested that we produce the first 35,000 tier sheets. Per the attached signed agreement, if we did not get the rental agreement in place which we have not, you agreed you would purchase what is produced to date. We shipped you 10,500 that you are currently using, and we have an additional 10,500 on our floor that are full converted, die cut, and sealed for Arglass specifically.
>
> Additionally we have 14,000 blank sheets that are not converted yet; we will *not* need to have the additional 14,000 pieces on the Purchase Order since they are not fully converted yet.
>
> Therefore please send a PO for 21,000 Tier Sheets at $5.32/each plus $7080 for the freight for the 2 truckloads ($3580 each).
> /
> $5.32/each was the agreed upon price in 2020 and we will honor that price still.
>
> We will Invoice this under 30 day payment terms once the Purchase Order is received. Can you send me this to me by Friday this week?

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

93.    In response, Mr. Luna attempted to deny both the number of tier sheets Arglass requested and Arglass' agreement to pay for them.

94.    This prompted Mr. Murphy to send another email on July 18, 2022 to correct Mr. Luna's misstatements.

> <u>That is incorrect</u>.  The agreement we have in place that we both signed was for the initial 10,500 tier sheets that we were shipping after the agreement was in place, and all tier sheets requested by Arglass and produced by Vantage, from the agreement date forward.  I have attached the copy so you can re-read.
>
> You and I both know you requested the first 35,000 Tier Sheets in the fall of 2020.  We shipped the first truckload of 10,500, and were holding the rest on our floor and have been for this long since 12-17-20.
>
> The good thing is that we don't need you to buy all 35,000, because like I said 14,000 are unconverted blanks that we will not need you to purchase.  But, a total of 21,000 are produced for you per our agreement.  That is the 10,500 that you are using, and the 10,500 on our floor that we need to ship to you.
>
> Please send PO for 21,000 Tier Sheets at $5.32/each plus $7080 for the freight for the 2 truckloads ($3580 each), as soon as possible.

95.    Mr. Luna responded to Mr. Murphy's email on November 17, 2022, at which time he again attempted to deny Arglass' agreement to pay.

96.    Despite their discussions and the clear language of the Tier Sheet Agreement he signed, Mr. Luna now (falsely) claimed Arglass had requested the 10,500 tier sheets solely for testing (which is absurd) for the Pallet Program; according to Mr. Luna, since the tier sheets failed testing (which they had not), Arglass could not use them for its Pallet Program and therefore, was under no obligation to pay for them.

> I know you worked hard on this project, and we understand, but it was a test Only, we do this every day, if a bottle does not work, we can make thousands and if the quality is bad, we get rejected.

97.     Mr. Luna's response prompted the following response from Mr. Murphy the next day:

> This is…completely unethical.  This is beyond belief, how Arglass has handled this entire project.  We have done everything you asked us to do.
>
> We are not even discussing the over $500,000.00 of pallets, tooling, raw materials, that you approved in writing to us to begin production on, and then abandoned and left us with this loss, after you approved the pallets in writing (I have all of the emails and you do too).
>
> You also approved these tier sheet samples early last year, and we have a written agreement that if the rental agreement was not in place, you would purchase the tier sheets that we shipped to you (after you approved the samples).
>
> This was not a "test" as you say, you do not "test" 10,500 tier sheets.  You tested the samples we sent, and then asked us to ship you the first 10,500 tier sheets which we did.  You have been using them, free of charge, and now you will not issue a PO and pay for them per our written agreement?

98.     These were the last direct communications between the parties regarding the Tier Sheet Agreement and Pallet Program; despite subsequent written demands, Arglass refuses to honor the Tier Sheet Agreement even though it retains possession of Vantage's tier sheets and, upon information, continues to use them and refuses to otherwise compensate Vantage for all costs and expenses incurred in reliance upon Arglass' assurances of an executed Rental Agreement and promises to pay.

## **COUNT I – BREACH OF CONTRACT (Tier Sheet Agreement)**

99.  Plaintiff incorporates each of the above allegations in this paragraph as if fully set forth herein.

100.  The Tier Sheet Agreement constitutes a valid and binding contract between Vantage and Arglass.

101.  Vantage complied with all terms and conditions of the Tier Sheet Agreement and timely shipped 10,416 in conformity with the Tier Sheet Agreement requirements.

102.  Arglass accepted the 10,416 tier sheets.

103.  The sole condition precedent to enforcement of the Tier Sheet Agreement has been satisfied because no Rental Agreement was ever executed by and between the parties.

104.  Arglass has breached the Tier Sheet Agreement by the above-described conduct and more specifically, by

   a.  failing to pay Vantage for the 10,416 tier sheets which were delivered to Arglass on December 21, 2020 and which Arglass accepted;

   b.  failing to pay Vantage for the additional 11,550 tier sheets it requested be released in August 2021; and

   c.  failing to pay Vantage for all freight and additional expenses as required under the Tier Sheet Agreement.

105.  As a direct and proximate result of Arglass' breach(es), Vantage has been damaged and continues to be damaged thereby.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in its favor against Defendant and award all direct, indirect, compensatory, exemplary, punitive and other damages in an amount in excess of $75,000, together with interest, costs, reasonable attorney's fees, and all other relief this Court finds just and equitable.

### COUNT II – BREACH OF CONTRACT (Tooling Purchase Order)

106.   Plaintiff incorporates each of the above allegations in this paragraph as if fully set forth herein.

107.   Arglass Purchase Order AYSE000016 dated August 11, 2020 with payment terms of Net 60 constitutes a valid and binding contract between Arglass and Vantage for pallet tooling.

108.   Vantage completed a significant amount of work relative to the pallet tooling and submitted invoices to Arglass for said work (totaling $65,410.50) against Purchase Order AYSE000016. (Vantage Invoices, **Ex. 8**).

109.   Arglass has failed to pay the full amount invoiced under Purchase Order AYSE000016.

110.   Arglass' failure to pay for all work performed relative to Purchase Order AYSE000016 constitutes a breach.

111.   As a direct and proximate result of Arglass' breach(es), Vantage has been damaged and continues to be damaged thereby.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in its favor against Defendant and award all direct, indirect, compensatory, exemplary, punitive and other damages in an amount in excess of $75,000, together with interest, costs, reasonable attorney's fees, and all other relief this Court finds just and equitable.

## COUNT III – PROMISSORY ESTOPPEL

112.   Plaintiff incorporates each of the above allegations in this paragraph as if fully set forth herein.

113.   Arglass made numerous promises of a forthcoming signed Rental Agreement and assurances the parties "had a deal" which were clear and definite.

114.   Arglass made those promises and assurances in such a manner that Vantage justifiably believed that such commitments had been made.

115.   When Arglass made those promises and assurances, it knew or should reasonably have expected that they would induce Vantage to expend time, costs and expenses to supply Arglass with requested tier sheets, prototype and production level pallets in accordance with Arglass' mandated timing.

116.   Vantage did expend time, costs and expenses and supplied Arglass with requested tier sheets, prototype and production level pallets in accordance with Arglass' mandated timing in reliance upon Arglass' promises and assurances.

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

117. Vantage has been damaged as a result of its reliance upon Arglass' promises and assurances.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in its favor against Defendant and award all direct, indirect, compensatory, exemplary, punitive and other damages in an amount in excess of $75,000, together with interest, costs, reasonable attorney's fees, and all other relief this Court finds just and equitable.

## COUNT IV – QUANTUM MERUIT

118. Plaintiff incorporates each of the above allegations in this paragraph as if fully set forth herein.

119. Vantage provided goods and services to Arglass with the understanding between the parties that Vantage would be compensated for its expenditures and the value of its services under the Tier Sheet Agreement, Purchase Order AYSE000016, and/or the Pallet Program/Rental Agreement.

120. Arglass accepted the benefits of Vantage's expenditures and services.

121. Arglass has been unjustly enriched in the amount of $615,043.81 by accepting those goods and services without rendering compensation.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in its favor against Defendant and award all direct, indirect, compensatory, exemplary, punitive and other damages in an amount in the amount of $615,043.81, together with

interest, costs, reasonable attorney's fees, and all other relief this Court finds just and equitable.

## COUNT V – UNJUST ENRICHMENT

122.   Plaintiff incorporates each of the above allegations in this paragraph as if fully set forth herein.

123.   Vantage and Arglass entered into an agreement with the understanding between both parties that Arglass would pay $5.32 for all 56"x44", 3 mm, 2" corner radius tier sheets requested by Arglass for use with non-Vantage pallets and their associated freight.

124.   Vantage performed under that agreement completely and in good faith by delivering 10,416 of the requested tier sheets to Arglass for immediate use in December 2020 and by purchasing an additional 11,550 tier sheets upon Arglass' specific request in August 2021.

125.   Arglass accepted the tier sheets delivered by Vantage and purchased by Vantage for Arglass' use and upon its request.

126.   Vantage and Arglass also entered into an agreement with the understanding between both parties that Arglass would pay for pallet tooling and Vantage's associated expenses.

127.   Vantage also performed under that agreement completely and in good faith, and invoiced Arglass for the costs and expenses incurred/expended relative to the pallet tooling.

128.   Arglass' partial payment of said pallet tooling costs and expenses is evidence of its acceptance of same.

129.   Arglass has wrongfully repudiated the parties' agreements and has been unjustly enriched.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in its favor against Defendant and award all direct, indirect, compensatory, exemplary, punitive and other damages in an amount in excess of $75,000, together with interest, costs, reasonable attorney's fees, and all other relief this Court finds just and equitable.

## COUNT VI – STATUTORY CONVERSION

130.   Plaintiff incorporates each of the above allegations in this paragraph as if fully set forth herein.

131.   Arglass' wrongful retention and use of Vantage's 10,416 tier sheets since December 2020 without compensating Vantage for same constitutes statutory conversion under MCL 600.2919a.

132.   Accordingly, Vantage is entitled to treble actual damages, plus costs and reasonable attorneys fees.

27

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in its favor against Defendant and award all direct, indirect, compensatory, exemplary, punitive and other damages in an amount in excess of $250,000, together with interest, costs, reasonable attorney's fees, and all other relief this Court finds just and equitable.

Respectfully submitted,

**COUZENS, LANSKY, FEALK, ELLLIS, ROEDER & LAZAR, P.C.**

**By: /s/ David A. Lawrence**
**        David A. Lawrence (P48630)**
**Attorneys for Plaintiff**
**39395 W. Twelve Mile Road**
**Suite 200**
**Farmington Hills, MI 48331**
**(248) 489-8600**
**David.lawrence@couzens.com**

**Dated:  January 26, 2024**